COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| DIANA RUIZ ESPARZA, | § | No. 08-13-00259-CV |
| Appellant, | § | Appeal from the |
| v. | § | 210th District Court |
| THE UNIVERSITY OF TEXAS AT EL PASO, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC#2012DCV02870) |
| | § | |

## **O P I N I O N**

Diana Ruiz Esparza has been employed by The University of Texas at El Paso (UTEP) as a staff interior designer since 1999. In 2012, Esparza sued UTEP under the Texas Commission of Human Rights Act (TCHRA) claiming that UTEP (i) discriminated against her based on her age, national origin, and gender, (ii) subjected her to a hostile work environment, and (iii) retaliated against her for filing a charge of discrimination with the EEOC. The trial court granted UTEP's plea to the jurisdiction and dismissed all of Esparza's claims with prejudice. We affirm in part and reverse and remand in part.

### BACKGROUND

Esparza is employed as a staff designer in the Planning and Construction Department of the V.P. Office of Business Affairs. While her job title has changed over the years – from

construction supervisor, to interior design specialist, to staff designer – her duties have remained the same. She has always focused on interior design work.

Esparza's problems at UTEP began in 2008. In January 2008, she received a written warning for missing two mandatory meetings. Shortly thereafter, she was recommended for a three-day suspension after missing a third meeting. Esparza explained that she missed the first meeting because she was ill, and claimed to have missed the second meeting because she had difficulty preparing a dish for an office gathering. Based on this response, Esparza's supervisor changed the proposed suspension into the lesser sanction of a written warning. In March 2008, Esparza missed another mandatory meeting and was again given notice of a three-day suspension. Esparza responded that she simply forgot the scheduled meeting. This time, Esparza received a three-day suspension from March 24-27, 2008. In October 2009, Esparza was warned of unacceptable conduct arising from neglect of duties. Esparza did not dispute the findings contained in the written warning. Subsequently in March 2010, Esparza was given notice of UTEP's intent to suspend her employment for neglect of duties and failing to attend a scheduled meeting. Esparza received a second three-day suspension from March 23-25, 2010. Esparza claimed that male employees were never suspended for similar infractions.

Esparza complained in particular about a project manager, Jason Parry, who she claimed failed to act as a team player, micro-managed, and acted in an authoritarian manner. She asserted that after she had voiced her concerns about Parry to the Director of Planning and Construction, Parry confronted her and "yelled in a strong and loud tone" that what she had done was unacceptable. Another time, Parry "treated me in a belligerent manner yelling without a good reason," making Esparza feel "very intimidated and confused" since she "was just doing my

2

job[.]" Feeling uncomfortable, sick, and "depressed by the way Mr. Parry unjustly treated" her, Esparza informed Parry she would not be able to attend a meeting, and asserted that "he took this as an opportunity to punish me[.]" She also complained that Parry used vulgar language in meetings, treated her with disrespect, and failed to give her adequate training.

Esparza also complained about Ed Soltero, the Director of Planning and Construction, claiming that he "discriminated and retaliated against" her by placing her on a floating schedule, when the previous Director had approved an 8:30 a.m. to 5:30 p.m. schedule. She also asserted that Soltero had removed her from important projects, restricted her from new projects, discouraged her from applying for the position of project manager, gave her low evaluations, and delayed approval of her vacation time. These actions made Esparza believe she has been discriminated against because of her gender and age.

Esparza also asserted that since January 2008, she has been paid less than male employees in her department. Specifically, she alleged that she shares the same work duties as, but is paid less than, five particular male employees in her department.

In response, UTEP filed a plea to the jurisdiction, asserting that Esparza could not demonstrate a prima facie case under TCHRA and therefore could not bring her claims within the limited waiver of sovereign immunity TCHRA provides. In particular, UTEP argued that: (1) Esparza's discrimination claims failed because she had not suffered an "adverse employment action"; (2) Esparza's disparate pay claim failed because the jurisdictional evidence established, and a federal court had already determined, that she was not similarly situated to her alleged male comparators; (3) Esparza's hostile work environment claim failed because Esparza did not exhaust administrative remedies and because she could not show she had suffered severe and pervasive

3

harassment; and (4) Esparza's retaliation claim failed because there was no causal connection between the actions of which she complained and her alleged protected activity. Esparza responded with jurisdictional evidence of her own. After hearing, the trial court granted UTEP's plea without specifying the basis for its ruling.

## DISCUSSION

In a single issue, Esparza contends the trial court erred in granting UTEP's plea to the jurisdiction and dismissing her claims. We conclude the trial court erred in dismissing Esparza's age, sex, and national origin discrimination claims without first affording her an opportunity to amend, because there was some evidence that Esparza was suspended twice "without pay," which affected her compensation and thereby rose to the level of an adverse employment action. We also conclude, however, that the trial court did not err in dismissing (i) Esparza's disparate pay claim, because the evidence showed that she was not similarly situated to her alleged male comparators; (ii) Esparza's hostile work environment claim, because Esparza failed to alleged facts showing the required severe and pervasive harassment; and (iii) Esparza's retaliation claim, because Esparza's petition demonstrates there was no causal connection between UTEP's alleged actions and Esparza's protected activity.

### Standard of Review

A plea to the jurisdiction based on sovereign immunity challenges a trial court's subject matter jurisdiction. *Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004); *Univ. of Texas at El Paso v. Ochoa*, 410 S.W.3d 327, 330 (Tex.App. – El Paso 2013, pet. denied). Whether a trial court has subject matter jurisdiction is a question of law subject to *de novo* review. *Miranda*, 133 S.W.3d at 226, 228; *Ochoa*, 410 S.W.3d at 330. In determining

4

whether a plaintiff has carried her burden to allege facts sufficient to establish subject matter jurisdiction, we review the allegations in the pleadings – accepting them as true and construing them in the plaintiff's favor – and any evidence relevant to the inquiry. *Miranda*, 133 S.W.3d at 226-27; *Mayfield v. Tarrant Regional Water Dist.*, __S.W.3d__, 2015 WL 3622757, at *2 (Tex.App. – El Paso June 10, 2015, no pet. h.). If the evidence raises a fact question on jurisdiction, the plea must be denied. *Miranda*, 133 S.W.3d at 227-28; *Mayfield*, 2015 WL 3622757, at *2.

## Sovereign Immunity

As a governmental entity, UTEP is generally immune from suit. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015); *Miranda,* 133 S.W.3d at 224. However, the Legislature has waived immunity for claims properly brought under TCHRA. *San Antonio Water Sys.*, 461 S.W.3d at 135; *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 660 (Tex. 2008). But that waiver extends only "to those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *San Antonio Water Sys.*, 461 S.W.3d at 135 (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia,* 372 S.W.3d 629, 636 (Tex. 2012)). To establish a trial court's jurisdiction over her TCHRA claim, a plaintiff must plead the elements of her statutory cause of action – the basic facts that make up her prima facie case. *See San Antonio Water Sys.*, 461 S.W.3d at 135; *Mission Consol. Indep. Sch. Dist.,* 372 S.W.3d at 636; *Mayfield*, 2015 WL 3622757, at *2.

## Adverse Employment Action

In a discrimination case based on circumstantial evidence, as here, the plaintiff must first establish a prima facie case. *El Paso Community College v. Lawler*, 349 S.W.3d 81, 86

5

(Tex.App. – El Paso 2010, pet. denied). One of the essential elements of a plaintiff's employment discrimination claim is that the plaintiff suffered an adverse employment action. *Id*. at 88. UTEP contends that the trial court correctly dismissed Esparza's age, sex, and national origin discrimination claims because she failed to plead facts showing that she suffered an adverse employment action.

UTEP notes that TCHRA addresses only "ultimate employment decisions," and does not provide relief for every decision made by an employer that might have some tangential effect upon employment decisions. *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 644 (Tex.App. – Houston [1st Dist.] 2015, no pet.). Instead, an adverse employment action requires a significant change in employment status. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998).

UTEP asserts that TCHRA was not designed to address every action that occurs in the workplace that makes an employee unhappy. Employment decisions actionable as adverse employment actions include decisions to hire, discharge, promote, and compensate. *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 142-43 (Tex.App. – Fort Worth 2000, pet. denied)*; see also Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 657 (5th Cir. 2002) (adverse employment actions "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating"). But, events such as disciplinary filings, supervisor's reprimands, poor performance reviews, negative employment evaluations, verbal threats to fire, reprimands, and criticism of the employee's work do not constitute actionable adverse employment decisions. *Elgaghil*, 45 S.W.3d at 142-43. UTEP contends that Esparza's petition complained of only various disciplinary reprimands, warnings, and disciplinary sanctions that

were insufficient to rise to the level of an adverse employment action necessary to maintain a TCHRA discrimination claim.

Indeed, Esparza's specific allegations of discrimination asserted, in a conclusory fashion, only that she had been discriminated against based on her age, gender, and national origin. And, while Esparza's petition also contained a one-page "statement of facts," her specific factual allegations complained only about her January 2008 written warning, the February 2008 recommendation for suspension, an October 2009 written warning, and the March 2010 recommendation for suspension and the resulting three-day suspension from March 23-25, 2010. We agree that these pleadings were insufficient to assert an "adverse employment action," which was a necessary element of Esparza's discrimination claims.

We note, however, that UTEP filed evidence in support of its plea to the jurisdiction. UTEP's own evidence established that Esparza was suspended not only from March 23-25, 2010, as she alleged, but also from March 24-27, 2008. More important, UTEP's evidence demonstrated that both of Esparza's three-day suspensions from work were "without pay." As UTEP points out in its brief, adverse employment actions include decisions on compensation. In fact, TCHRA itself provides that an employer violates the Act if the employer improperly discriminates against an employee "in connection with compensation[.]" TEX.LAB.CODE ANN. § 21.051(1) (West 2015).

Further, the federal courts have repeatedly held that suspensions "without pay" constitute adverse employment actions under Title VII.[1] While the federal courts have consistently held that

---

[1] Because TCHRA was enacted in part to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," we look to relevant federal law for guidance when the relevant provisions of Title VII are analogous. *See* TEX.LAB.CODE ANN. § 21.001(1); *San Antonio Water Sys.*, 461 S.W.3d at 136-37; *AutoZone, Inc. v. Reyes,* 272 S.W.3d 588, 592 (Tex. 2008) (per curiam).

7

suspensions "with pay" are not adverse employment actions,[2] they have just as consistently held

that suspensions "without pay" constitute adverse employment actions. *See, e.g., Luster v.*

*Illinois Dep't of Corr.*, 652 F.3d 726, 730 (7th Cir. 2011) ("Luster's suspension without pay before

he resigned was an adverse employment action sufficient to satisfy the third element for purposes

of summary judgment."); *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 791 (6th

Cir. 2004) (thirty-seven day suspension without pay was sufficient to constitute an adverse

employment action); *Myers v. Mothers Work, Inc.,* 2009 WL 513916, at \*2 (S.D. Tex. Mar.2,

2009) ("Suspensions without pay are adverse employment actions."); *Johnson v. Alice Indep. Sch.*

*Dist.*, No.CIV.A. C-12-170, 2012 WL 4068678, at \*3 (S.D. Tex. Sept. 14, 2012) ("While

administrative leave, by itself, may not constitute an adverse employment action, being placed on

administrative leave without pay does.").[3]

And, the courts have determined that even a short-term suspension without pay is

sufficiently adverse to constitute an adverse employment action. *See, e.g., Lovejoy-Wilson v.*

*NOCO Motor Fuel, Inc.,* 263 F.3d 208, 224 (2d Cir. 2001) (holding that a one-week suspension

---

[2] *See, e.g., Breaux v. City of Garland,* 205 F.3d 150, 158 (5th Cir. 2000) (holding a police officer suffered no adverse employment action where he was temporarily placed on paid administrative leave); *Singletary v. Mo. Dep't of Corr.,* 423 F.3d 886, 891–92 (8th Cir. 2005) (holding that investigatory suspension with pay was not adverse employment action); *Peltier v. United States,* 388 F.3d 984, 988 (6th Cir. 2004) (holding that "a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action"); *Moisant v. Air Midwest, Inc.,* 291 F.3d 1028, 1031–32 (8th Cir. 2002) (holding that suspension with pay was not adverse employment action); *Jackson v. City of Columbus*, 194 F.3d 737, 752 (6th Cir. 1999) (holding that police chief's suspension with pay was not an adverse employment action). *See also Dodge v. City of Belton, Mo.*, No. 10-0038-CV-W-ODS, 2011 WL 529708, at \*3 (W.D. Mo. Feb. 4, 2011) ("Nor does Dodge's suspension with pay constitute an adverse employment action."); *Andrews v. Lockheed Martin Energy Sys., Inc.*, No. 3:06-CV-42, 2006 WL 2711818, at \*11 (E.D. Tenn. Sept. 21, 2006) (one-day suspension with pay does not amount to a materially adverse employment action); *Rose v. Buckeye Telesystem, Inc.*, 181 F.Supp.2d 772, 777 (N.D. Ohio 2001) ("Plaintiff's one-day suspension with pay does not constitute an adverse employment action.").

[3] *See also Rose*, 181 F.Supp.2d at 776–77 ("For example, discipline constitutes an adverse employment action … when the suspension is without pay."); *Pollard v. Azcon Corp.*, 904 F.Supp. 762, 771 (N.D. Ill. 1995) ("However, Pollard still received a 30–day suspension without pay. This suspension equates to a materially adverse action taken by Azcon, and the third element of the *prima facie* case is met.").

without pay is an adverse employment action, even if pay is later reimbursed, because the plaintiff "at least suffered the loss of the use of her wages for a time"); *Beshir v. Jewell*, 961 F.Supp.2d 114, 125 n.5 (D.D.C. 2013) (Plaintiff's arguments that, "in light of her five-day unpaid suspension and administrative leave, she has suffered an adverse employment action … are well founded"); *cf. Jones v. Ohio State Univ.*, No. 2:05–CV–137, 2007 WL 1574115, at *7 (S.D. Ohio May 29, 2007) (holding one-day unpaid suspension not an adverse employment action).

We conclude that Esparza's two three-day suspensions, totaling six days without pay, were employment decisions connected to compensation under TCHRA and were sufficiently adverse to constitute adverse employment actions. Thus, when the trial court considered UTEP's plea to the jurisdiction, it was faced with a petition that failed to allege facts sufficient to state a discrimination claim under TCHRA, but is was also faced with jurisdictional evidence indicating that Esparza could amend her petition to cure this pleading defect by asserting that she had twice been suspended without pay. It is well settled that, unless the pleadings or jurisdictional evidence demonstrate that an amended pleading cannot cure the defect, a plaintiff should be afforded the opportunity to amend. *See Miranda*, 133 S.W.3d at 227-28; *County of Cameron v Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Mayfield*, 2015 WL 3622757, at *5. Accordingly, the trial court erred in dismissing Esparza's age, sex, and national origin discrimination claims on the ground her complaints did not involve an adverse employment action, without affording Esparza the opportunity to cure her pleading by amendment.

### Disparate Pay Claim

In its plea to the jurisdiction, UTEP recognized that Esparza's allegation that she was paid less than certain males in her department "can constitute an adverse employment action[.]"

UTEP argued in part, however, that Esparza could not show that the male comparators she identified were treated differently "under nearly identical circumstances[.]"[4] We agree.

To prevail on a claim of gender discrimination, a plaintiff must prove that she was "treated less favorably than similarly situated members of the opposing class[.]" *Ysleta Indep. Sch. Dist. v. Monarrez,* 177 S.W.3d 915, 917 (Tex. 2005) (per curiam). The Texas Supreme Court has held that "[e]mployees are similarly situated if their circumstances are comparable in all material respects[.]" *Id.* The Fifth Circuit has articulated a similar standard, saying that employees are similarly situated if their circumstances are "nearly identical." *See Perez v. Tex. Dep't of Criminal Justice, Institutional Div.,* 395 F.3d 206, 213 (5th Cir. 2004); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir. 2001); *see also Herbert v. City of Forest Hill*, 189 S.W.3d 369, 376 (Tex.App. – Fort Worth 2006, no pet.) ("More favorable treatment of a person outside a protected class can be used to show discrimination only if the circumstances are nearly identical.").

In disparate pay cases, if a plaintiff cannot show her job responsibilities are substantially the same as the comparators, she cannot establish a prima facie case by comparing her compensation to that of the comparators. *See, e.g., Johnson v. TCB Const. Co.*, 334 Fed.Appx. 666, 670 (5th Cir. 2009) (plaintiff's attempt to compare his job to an operator's for disparate pay purposes failed because plaintiff's work and that of the operators was not substantially the same job); *see also Jackson v. Honeywell Int'l, Inc.*, 601 Fed.Appx. 280, 285 (5th Cir. 2015) (plaintiff

---

[4] UTEP also argued that Esparza had previously made an Equal Pay Act claim in federal court and had lost because she could not show her male comparators were treated differently under nearly identical circumstances. UTEP asserts the doctrine of issue preclusion thus barred her from re-litigating that issue in state court. Esparza contends that issue preclusion does not apply because the Equal Pay Act and TCHRA employ different standards to determine if she was improperly paid less than her male comparators. We need not determine if issue preclusion applies, however, because we conclude the jurisdictional evidence demonstrated that Esparza and the male comparators were not similarly situated.

failed to establish a prima facie case of racially motivated disparate pay, because the two white comparator employees were hired at different times, held different positions, and worked under different supervisors, and there was no evidence that the plaintiff and these white employees had similar job duties, disciplinary histories, or levels of experience). Simply put, "[e]mployees who hold different job positions are not similarly situated." *Villarreal v. Del Mar Coll.*, No. 13-07-00119-CV, 2009 WL 781750, at *8 (Tex.App. – Corpus Christi-Edinburg Mar. 26, 2009, pet. denied) (mem. op., not designated for publication).

Esparza alleged that "[b]eginning on or about January 31, 2008 to the present, [she] has been paid less than male employees in her department." Specifically, Esparza alleged that she shares the same work duties, but is paid less than, Michael D. Gossett, Robert W. Meredith, Jaime Montoya, Miguel Perez, and Jason Parry. UTEP's jurisdictional evidence showed, however, that these individuals hold different positions and have different job responsibilities than Esparza. Each of these individuals is employed either as a Project Manager or Construction Manager, not a Staff Designer like Esparza. Esparza's job duties at UTEP have always focused on interior design work. Project Managers, on the other hand, manage "all aspects of capital improvement projects from conception through completion and final occupancy, to ensure that the goals of project planning, design, budgets, schedules and construction are met within prescribed time frame and funding." Likewise, Construction Managers manage "assigned capital projects through bidding, construction, and close out phases."

In contrast, Esparza's role is limited to working on the design of interior spaces, including furniture replacement, color schemes, painting and carpet replacement, and some limited remodeling. Esparza does not manage renovations of entire buildings or manage projects that

11

require reconfiguration of entire building systems. Esparza admits that those larger, more complex projects are managed by the Department's Project Managers. Similarly, Esparza does not manage entire projects relating to the structural renovations of entire buildings, construction of new buildings, or additions, roofing projections, or exterior renovations. Rather, she only "participate[s] in that part that is interior design or interior offices." Esparza's alleged comparators, then, have separate and distinct positions within the department, have different enumerated responsibilities as set forth in the job descriptions for those positions, and do not perform the same work as Esparza.

Accordingly, Esparza's disparate pay claim fails because she cannot show that she was treated less favorably than "similarly situated members of the opposing class."

**Hostile Work Environment Claim**

UTEP attacked Esparza's hostile work environment claim based on the sufficiency of her pleadings. UTEP contended that Esparza had not alleged that she suffered the severe and pervasive harassment necessary to establish a prima facie case of hostile work environment.[5]

To make a prima facie showing of a hostile environment claim, a plaintiff must show in part that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the victim's employment and create a hostile or abusive working environment. *Mayfield*, 2015 WL 3622757, at *3; *Spring v. Walthall,* No. 04-09-00474-CV, 2010 WL 2102988, at *5 (Tex.App. – San Antonio May 26, 2010, no pet.) (mem. op., not designated for publication) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114

---

[5] UTEP also contended Esparza failed to exhaust administrative remedies because she did not raise her hostile work environment claim in her EEOC charge. We do not reach this issue because we conclude the pleadings and evidence demonstrate Esparza did not suffer the severe and pervasive harassment necessary to establish a hostile work environment.

S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)). Abusiveness requires extreme conduct and takes a middle path between making actionable conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. *Harris,* 510 U.S. at 21, 114 S.Ct. at 370; *Mayfield*, 2015 WL 3622757, at *3; *Walthall,* 2010 WL 2102988, at *6.

The conduct must be both objectively and subjectively hostile or abusive. *Mayfield*, 2015 WL 3622757, at *3; *Walthall,* 2010 WL 2102988, at *6. That is, the work environment must be both one that a reasonable person would find hostile or abusive and one that the victim in fact perceived to be so. *Mayfield*, 2015 WL 3622757, at *3; *City of Houston v. Fletcher,* 166 S.W.3d 479, 489 (Tex.App. – Eastland 2005, pet. denied). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is not actionable. *Harris,* 510 U.S. at 21, 114 S.Ct. at 370; *Mayfield*, 2015 WL 3622757, at *3.

In assessing objective hostility or abusiveness, the discriminatory conduct is viewed from the perspective of a reasonable person in the plaintiff's position in the same circumstances. *Oncale v. Sundowner Offshore Servs. Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998); *Mayfield*, 2015 WL 3622757, at *3. We consider the totality of the circumstances including frequency, severity, physical threats or humiliation, and whether the abusive conduct unreasonably interfered with the employee's work performance. *Harris* 510 U.S. at 23, 114 S.Ct. at 371; *Mayfield*, 2015 WL 3622757, at *3.

In pleading her hostile work environment claim, Esparza specified that it was "because of [her] prior EEOC activity" that she "was subjected to a hostile work environment." The only EEOC activity noted in her petition was the filing of her charge of discrimination with the EEOC

13

on March 25, 2010. But Esparza's factual allegations speak only of the written warnings in 2008 and 2009, recommendations for suspension in 2008 and 2010, and her three-day suspension from March 23-25, 2010. Her one other factual allegation is that she was paid less than certain male co-workers in her department. Thus, Esparza failed to make any factual allegations showing that she was subjected to a hostile work environment because of her EEOC activity, much less any allegations to show the severe and pervasive harassment necessary to support a hostile work environment claim.

Further, the evidence Esparza submitted in response to the plea to the jurisdiction failed to show that she was subjected to a hostile work environment because of her EEOC activity. Like her pleadings, Esparza's evidence fails to raise evidence of any actions taken by UTEP after she filed her EEOC claim, much less any actions that constitute harassment. And, the evidence Esparza did submit of UTEP's actions performed before she filed her EEOC claim do not demonstrate severe and pervasive harassment.

Esparza claims that a project manager, Jason Parry, was not a team player, was a micro-manager, and acted in an authoritarian manner. She asserted that he once yelled at her "in a strong and loud tone." Another time, Parry "treated me in a belligerent manner" making Esparza feel intimidated and confused. She also complained that Parry used vulgar language in meetings, treated her with disrespect, and failed to give her adequate training. Esparza asserts that Ed Soltero, the Director of Planning and Construction, placed her on a floating schedule, removed her from important projects, restricted her from new projects, discouraged her from applying for the position of project manager, gave her low evaluations, and delayed approval of her vacation time. We conclude that these actions, assuming they are even relevant to Esparza'

14

claim as pleaded, are not sufficiently severe or pervasive enough to create an objectively hostile or abusive work environment, and thus are not actionable.

Esparza failed to allege facts necessary to support her hostile work environment claim, and the evidence demonstrates that the necessary jurisdictional facts do not exist. "Where the pleadings and evidence demonstrate that the necessary jurisdictional facts do not exist … [a]llowing plaintiffs the chance to amend when they have already marshaled their facts in this manner would simply serve no purpose." *See Mayfield*, 2015 WL 3622757, at *5. Accordingly, we conclude the trial court did not err in dismissing Esparza's hostile work environment claim.

**Retaliation Claim**

For similar reasons, we conclude the trial court did not err in dismissing Esparza's retaliation claim. TCHRA prohibits employers from engaging in retaliatory action against an employee who opposes a discriminatory practice, makes or files a charge, files a complaint, or participates in an investigation, proceeding, or hearing. TEX.LAB.CODE ANN. § 21.055 (West 2015). To establish a violation, the employee must show that: (1) she engaged in an activity protected by TCHRA; (2) an adverse employment action occurred; and (3) there exists a causal link between the protected activity and the adverse action. *San Antonio Water Sys.*, 461 S.W.3d at 137. UTEP's plea to the jurisdiction contended there was no causal connection between any of its actions and Esparza's alleged EEOC activity. Esparza alleged that UTEP's "unlawful employment practices … were carried on … and committed because of Plaintiff's EEO activity." As noted above, the only protected activity Esparza alleged was that she filed an EEOC claim on March 25, 2010. Esparza's specific factual allegations, however, addressed only actions by UTEP that occurred before she filed her EEOC charge. Likewise, the evidence she filed in

15

response to UTEP's plea addressed only actions occurring before she filed her EEOC charge. It is axiomatic that UTEP's actions that occurred before Esparza filed her EEOC charge could not have been caused by the EEOC filing. *See Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 263 (Tex.App. – Dallas 2009, pet. denied) (plaintiff cannot show a causal link in a retaliation claim when the employer's alleged acts in retaliation occurred long before the plaintiff engaged in any protected activity); *see also Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 656 (Tex. 2013) (in Whistleblower Act claim, plaintiff failed to show his report to law enforcement caused the adverse personnel action, because the personnel action occurred before plaintiff's report to law enforcement). Accordingly, the trial court did not err in dismissing Esparza's retaliation claim.

Further, to the extent Esparza contends UTEP retaliated against her for opposing a discriminatory practice, she has failed to allege a retaliation claim. We note that in establishing retaliation based on opposition, an employee must show more than she merely complained to the employer about her treatment. "The employee must put the employer on notice that the employee is opposing practices that the [sic] she believes constitute prohibited discrimination." *Warrick v. Motiva Enterprises, L.L.C.*, No. 14-13-00938-CV, 2014 WL 7405645, at *7 (Tex.App. – Houston [14th Dist.] Dec. 30, 2014, no pet.) (mem. op., not designated for publication); *see Chandler v. CSC Applied Technologies, LLC,* 376 S.W.3d 802, 823-24 (Tex.App. – Houston [1st Dist.] 2012, pet. denied) (plaintiff did not engage in protected activity by complaining he was eligible to go on a trip, but not specifically informing management that he believed his race was the reason why he was not included); *Martinez v. Wilson County*, No. 04-09-00233-CV, 2010 WL 114407, at *3 (Tex.App. – San Antonio Jan. 13, 2010, no pet.) (mem. op., not designated for publication) (complaint of unfair treatment and harassment does not put the employer on notice that the

complaint was based on sexual discrimination); *see also Brown v. United Parcel Serv., Inc.,* 406 Fed.Appx. 837, 840 (5th Cir. 2010) ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue."); *Harris–Childs v. Medco Health Solutions, Inc.,* 169 Fed.Appx. 913, 916 (5th Cir. 2006) (holding appellant produced no evidence that when she made her complaints to management, she ever mentioned that she felt she was being treated unfairly due to her race or sex). Esparza's pleadings do not allege, and the evidence does not show, that Esparza informed anyone at UTEP that she believed her treatment was improperly based on her age, sex, or national origin. Accordingly, Esparza has failed to assert a retaliation claim based on opposition as well.

## CONCLUSION

Esparza's sole issue on appeal is granted in part and denied in part. The trial court erred in dismissing Esparza's age, sex, and national origin discrimination claims. While Esparza failed to allege a necessary element of her prima facie case – that an adverse employment action had occurred – she should have been afforded the opportunity to amend her pleadings to cure that deficiency. We therefore reverse and remand Esparza's age, sex, and national origin discrimination claims, to the extent they are not based on disparate pay. As to Esparza's claims for disparate pay, hostile work environment, and retaliation, we conclude the trial court did not err in granting UTEP's plea to the jurisdiction. Accordingly, we affirm the trial court's dismissal of Esparza's claims for disparate pay, hostile work environment, and retaliation.

August 7, 2015                           STEVEN L. HUGHES, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

17