

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DIANA RUIZ ESPARZA, | § | No. 08-22-00094-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 3 |
| THE UNIVERSITY OF TEXAS AT EL PASO, | § | of El Paso County, Texas |
| | § | (TC# 2013DCV4283) |
| Appellee. | | |

**O P I N I O N**

**BACKGROUND**

In this employment discrimination case, Appellant challenges the grant of a plea to the jurisdiction in favor of Appellee. We affirm.

***Factual and Procedural Background***

In 1999, Appellant, Diana Ruiz Esparza (Esparza), was employed by Appellee, University of Texas at El Paso (UTEP), as a Construction Supervisor in the Planning and Construction Department of its V.P. Office of Business Affairs. Although her job title has changed over the years from construction supervisor to staff designer, her duties remained the same.

**Esparza's Performance and Disciplinary Actions**

The following is a summary of Esparza's job performance and disciplinary actions leading to her ultimate termination:

- January 31, 2008:     Written warning issued for missing two mandatory meetings.

- February 4, 2008:     Esparza recommended for suspension after missing a third mandatory meeting on February 1, 2008.

- March 17, 2008:     Esparza missed another mandatory meeting on March 17, 2008 and was given notice of suspension. Esparza was thereby suspended for three days.

- October 8, 2009:     Written Warning issued for "unacceptable conduct" regarding several projects.

- March 10, 2010:     Notice of intent to suspend employment for failing to attend a meeting, poor communication with a client, and inability to properly execute the technical aspects of a project.

- March 22, 2010:     Notice of suspension issued.

- March 23–25, 2010:   Esparza was again suspended for three days.

UTEP continued to employ Esparza and provided her with assistance, counsel, resources, and guidance to help improve her performance. Esparza's poor job performance persisted, and on September 10, 2013, UTEP issued its intent to terminate employment. The basis of the intent to terminate letter is as follows:

> [P]ersistent and significant issues with several projects that have been assigned to you. Poor communication, dissatisfied clients, scheduling and budgetary issues, and your inability to comply with Health, Safety, Welfare and Accessibility code requirements have caused an enormous waste and expenditure of material, labor and resources, and required unnecessary rework and costly management intervention.

The letter further provided a factual synopsis of the more recent project setbacks Esparza produced, which according to UTEP, directly impacted its ability to serve its customers and deliver timely

completed projects. The letter outlining Esparza's repeated failures leading to her ultimate termination is as follows:

1. **Engineering – Installation of new glass doors for cSETR Lab - Room E211**

   Scope: Two pairs of glass doors were requested by the client to be installed to create secure areas to stage materials to be tested in the lab. Upon completion of the material testing, the rooms will be used as lab workstations.

   Performance issues: Building, life safety, and accessibility codes were not reviewed prior to purchase of these doors. Greg McNicol and I had advised you during our monthly review meeting that a review of code requirements should be performed and reviewed with Robert Parker or me prior to the execution of the work. Instead you ordered the custom doors and they were manufactured based on your specifications. The doors you purchased did not comply with code requirements, but because of a planned event they nonetheless had to be installed. Consequently the client's funds were squandered, the product delivered was grossly inadequate, instead of a project being completed, it produced more work and ultimately, a new set of doors will have to be purchased that comply with all code requirements.

2. **Memorial Gym – Ticket Office Renovations for Auxiliary Support**

   Scope: You were tasked with the renovation of a ticket counter, and from the onset of this project the client was frustrated and believed that you were not listening to their requests and needs.

   Performance issues: Due to the client's frustration a meeting was held on April 29th between Rob Parker, Jerri Herrera, Lillian Gallegos and you to work out the difficulties. At that time the client continued to express frustration with your poor communication on this project. As a result of your performance and behavior on this project (and others) you were given a Written Warning on May 21, 2013, for your refusal to follow instructions and displaying a confrontational attitude toward our clients.

   This project was originally assigned to you in January of 2013 and was originally scheduled to be completed in March. Due to your inability to complete the task, the project deadline was moved to the end of the summer and still, you failed to meet the critical August project deadline. It is glaringly apparent that neither informal discussions nor formal disciplines have improved your performance.

   As a result of the client's ongoing frustration and your blatant disregard of their required security needs, the client requested that our department assign another

staff member to manage the completion of this project. A Project Manager has been assigned to complete this project and to properly schedule the contractors to do their work while providing a secure environment where cash and other valuables are present in the space, again an action you fail to coordinate with the clients.

3. **Chase Bank Building – Reconfiguration of meeting rooms for College of Business Executive MBA Program**

Scope: Representatives of the Business School requested that you develop a cost and a plan to consolidate two conference spaces into a larger one at the CHASE building and to have this space available for classes beginning the Fall 2013 Semester.

Performance issues: This project has been active for eight months under your responsibility, and as of August 1, 2013 the users had not been provided an established viable solution or a budget. Because of this, classes scheduled to take place in this space had to be cancelled for the fall semester. Due to your inaction the Dean for the College of Business has now cancelled this project, due to the lack of progress.

I have, on numerous occasions, informed all of our staff, including you, to review any and all design solutions with me for approval prior to presenting final solutions to clients for their review and approval. On August 3, 2013, you presented a design solution to the client for this project without my prior review and/or approval.

Additionally, after our Departmental Reorganization meeting which occurred on July 29th, 2013 thru an email you informed the Dean, Assistant Dean and CAO of the College of Business Administration that "*I want to take the opportunity to inform you that the Department of Planning and Construction was reorganized and I will be no longer doing project management, construction management, processing the paper work, provide estimate to clients, ordering* furniture, coordinating with vendors, etc." The statement you provided is inaccurate unprofessional, and inappropriate, and such misinformation should not have been communicated to the client, which only added to confusion as to the status of the project.

Your actions on these projects have resulted in requiring our department to assign other staff members to these projects to ensure that they are properly completed. During the past 10 months Rob Parker and I have tried to provide you with assistance, counsel, resources and guidance to help you improve your performance.

4

I have learned that prior to my becoming the Director of the Department, you have been given several written warnings and were suspended for three days without pay for similar work performance issues, behavior and conduct. Additionally, your annual performance evaluations do not reflect substantive improvement.

Given this history and now having worked with you for some time, it is my assessment that all forms counseling and levels of disciplinary measures have been attempted and regrettably, they have been unsuccessful. I do not believe that any additional reprimand and/or suspension will correct or improve your performance.

Esparza was formally terminated on September 20, 2013, by letter, which emphasized Esparza's "poor communication, dissatisfied clients, scheduling and budgetary issues and [] inability to comply with code requirements [which] caused an enormous waste and expenditure of labor, materials, and resources[]" as the basis for her termination.

### Esparza's Employment Discrimination Actions

On March 25, 2010, Esparza filed a charge of discrimination with the Texas Workforce Commission (TWC) and the Equal Employment Opportunity Commission (EEOC), alleging discrimination based on age, sex, national origin, and retaliation. Esparza subsequently filed suit in the Western District of Texas on June 23, 2010, alleging violations of the Equal Pay Act (EPA) and identifying male comparators.[1] UTEP responded by filing a motion for summary judgment, maintaining Esparza could not establish a prima facie case of an EPA claim. The Western District of Texas Court agreed and granted UTEP's motion for summary judgment. Esparza did not appeal.

On February 21, 2012, Esparza filed her first state lawsuit in the 210th Judicial District Court of El Paso County Texas. Esparza alleged discrimination based on age, national origin, gender, hostile work environment, and retaliation, and claimed the same facts and comparators as

---

[1] Specifically, Esparza averred she was paid less than five male comparators despite performing equal work requiring equal skill, effort, and responsibilities.

her dismissed federal lawsuit. In response, UTEP filed a plea to the jurisdiction, asserting Esparza could not demonstrate a prima facie case under the Texas Commission of Human Rights Act (TCHRA) and therefore could not bring her claims within the limited waiver of sovereign immunity the TCHRA provides. The trial court granted UTEP's plea to the jurisdiction and Esparza's claims were thereby dismissed with prejudice.

On August 14, 2013, Esparza appealed to the Eighth Court of Appeals of Texas. *Esparza v. Univ. of Texas at El Paso*, 471 S.W.3d 903, 907 (Tex. App.—El Paso 2015, no pet.).[2] On September 18, 2013, Esparza filed her second EEOC charge alleging retaliation as discrimination.

On November 18, 2013, Esparza filed a second state lawsuit in County Court at Law Number Three of El Paso County, Texas—the lawsuit subject of this appeal. Esparza alleged discrimination based on national origin and retaliation. In response, UTEP filed a plea to the jurisdiction, which was denied, and on February 11, 2014, the trial court abated all proceedings due to Esparza's premature filing.[3]

---

[2] In a single issue, Esparza maintained the trial court erred in granting UTEP's plea to the jurisdiction and dismissing her claims. *Esparza v. Univ. of Texas at El Paso*, 471 S.W.3d 903, 907 (Tex. App.—El Paso 2015, no pet.)*.* On August 7, 2015, this Court issued its opinion addressing whether UTEP: 1) discriminated against Esparza based on age, national origin, and gender, (2) subjected her to a hostile work environment, and 3) retaliated against her for filing a charge of discrimination. *Id.* at 906. We ultimately concluded the trial court erred in dismissing Esparza's age, sex, and national origin discrimination claims without first affording her an opportunity to amend. *Id.* at 907-08. We also concluded, however, the trial court did not err in dismissing 1) Esparza's disparate pay claim, because the evidence showed she was not similarly situated to her alleged male comparators, 2) Esparza's hostile work environment claim, because Esparza failed to allege facts showing the required severe and pervasive harassment, and 3) Esparza's retaliation claim, because Esparza's petition demonstrated there was no causal connection between UTEP's alleged actions and Esparza's protected activity. *Id.* at 908. We therefore reversed and remanded Esparza's age, sex, and national origin discrimination claims, and affirmed the trial court's dismissal of Esparza's claims for disparate pay, hostile work environment, and retaliation. *Id*. at 915.

[3] The trial court abated all proceedings until the 181st day after the charge was filed with TWC or issuance of notice of right to sue by TWC.

On February 20, 2014, Esparza filed another EEOC charge of discrimination based on sex, national origin, age, equal pay, and retaliation for her prior EEO activity.[4] On October 24, 2014, UTEP filed a second plea to the jurisdiction, alleging Esparza was collaterally estopped from bringing forth her claims and maintaining it retained immunity because Esparza could not establish a prima facie case under the TCHRA. The trial court denied UTEP's second plea to the jurisdiction on December 2, 2014; UTEP appealed.

On appeal before this Court, we considered whether the trial court erred in denying UTEP's plea to the jurisdiction. *Univ. of Texas at El Paso v. Esparza*, 510 S.W.3d 147, 152 (Tex. App.—El Paso 2016, no pet.).[5] We ultimately reversed and remanded to the trial court to afford Esparza the opportunity to amend her pleadings to enable the court on remand to address whether Esparza satisfied her prima facie burden.

On November 4, 2019, Esparza filed her third amended petition, alleging retaliation due to the termination of her employment based on her prior EEO activity. UTEP then filed its third plea to the jurisdiction.[6] UTEP alleged Esparza's third amended petition affirmatively demonstrated that no retaliation occurred. According to UTEP, Esparza could not establish a prima facie case under the TCHRA, and, therefore, failed to invoke the limited waiver of sovereign immunity

---

[4] Esparza specifically claimed the hearing officer's actions were in retaliation of her 2010 and 2013 charges of discrimination.

[5] Issue One alleged Esparza's claims were collaterally estopped. *Univ. of Texas at El Paso v. Esparza*, 510 S.W.3d 147, 153 (Tex. App.—El Paso 2016, no pet.). In Issue Two, UTEP alleged Esparza failed to plead facts to establish her TCHRA claims. *Id.* Issue Three maintained Esparza failed to plead a prima facie case of retaliation. *Id.* On September 28, 2016, we overruled Issues One and Three, and sustained Issue Two and remanded to the trial court to allow Esparza the opportunity to replead. *Id.* at 158, 161. Then, on March 28, 2018, by mandate, we concluded there was error in part of the judgment holding Esparza pled a viable prima facie case concerning her wrongful discharge and retaliation claims.

[6] Delay here is due to the COVID-19 pandemic and the granting of a continuance, which set the case for a jury trial on February 14, 2022.

therein. The trial court agreed and granted UTEP's third plea to the jurisdiction. This appeal followed.

## DISCUSSION

### *Standard of Review*

A plea to the jurisdiction challenges a court's authority to decide a case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012). It is a dilatory plea that serves to defeat a cause of action without regard to whether the asserted claims have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a challenge to a trial court's subject matter jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

A plea to the jurisdiction based on sovereign immunity properly challenges a trial court's subject matter jurisdiction. *Id.* at 225-26. In a suit against a governmental employer, such as UTEP, the prima facie case implicates both the merits of the claim and the court's jurisdiction because of the doctrine of sovereign immunity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635-36 (Tex. 2012). Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which the governmental unit has been sued, absent consent. *Id*. at 636. The Legislature has waived immunity in suits only where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder. *Id.* Absent pleadings establishing a prima facie case, the governmental entity's immunity from suit has not been waived. *Id*.

When a plea to the jurisdiction challenges the pleading itself, as is the case here, we determine whether the plaintiff has alleged facts that affirmatively establish the court's jurisdiction. *Miranda*, 133 S.W.3d at 226. We must accept the allegations in the pleadings as true and construe them in the plaintiff's favor. *Id.* If the pleadings do not contain sufficient facts to

8

affirmatively demonstrate the trial court's jurisdiction, but also do not affirmatively demonstrate incurable jurisdictional defects, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 226-27. If the pleadings do affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without affording the plaintiff an opportunity to amend. *Id.* at 227. However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.*

After the governmental unit asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiff, when the facts underlying the merits and subject matter jurisdiction are intertwined, to establish a disputed material fact regarding the jurisdictional issue. *Id.* at 228. If the relevant evidence fails to raise a fact question on the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law. *Id.*

### *Applicable Law*

Esparza brought her claim for retaliation under the Texas Commission on Human Rights Act. The TCHRA "is a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964 (Title VII), that provides the framework for employment discrimination claims in Texas." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 502-03 (Tex. 2012).[7] It was enacted to address the "specific evil" of workplace discrimination and retaliation, and to coordinate and conform with federal anti-discrimination and retaliation laws. *Id.* at 504. The TCHRA provides:

---

[7] Our analysis is limited to the TCHRA framework for employment discrimination claims.

> An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:
>
> (1) opposes a discriminatory practice;
>
> (2) makes or files a charge;
>
> (3) files a complaint; or
>
> (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

TEX. LAB. CODE ANN. § 21.055. While a retaliation claim may be proved through either direct or circumstantial evidence, most employers do not expressly state a retaliatory purpose for their decisions. *Crutcher v. Dallas Independent School Dist.*, 410 S.W.3d 487, 493 (Tex. App.—Dallas 2013, no pet.). In the absence of direct evidence of discrimination, the employee must establish a prima facie case of discrimination under the *McDonnell Douglas* burden shifting analysis. *Id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). To establish a prima facie case of retaliation, a plaintiff must show: 1) she engaged in a protected activity, 2) an adverse employment action occurred, and (3) a causal link exists between the filing of the claim and the adverse action. *Crutcher*, 410 S.W.3d at 493.

The scope of the retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm, and is not limited to conduct that constitutes the "ultimate employment decision." *Id.* The retaliation provision protects an employee from actions that a reasonable employee would have found materially adverse. *Id.* An employment action is material if it is likely to deter employees who have faced discrimination from complaining to the EEOC, the courts, and their employers. *Id.* This objective standard is applied to a fact-specific inquiry because context matters and the significance of any given act of retaliation will often depend upon the circumstances. *Id.*

If a plaintiff meets her burden to establish a prima facie case of retaliation, the burden then shifts to the defendant to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action. *Id.* The plaintiff must then assume the burden to present proof that the stated reason was pretextual by rebutting each non-discriminatory or non-retaliatory reason articulated by the employer. *Id*.

*Analysis*

It is undisputed that Esparza's filings are protected activities and an adverse employment action occurred when UTEP terminated her on September 20, 2013. The issue here is whether Esparza established a causal connection between the protected activity and the adverse employment action to establish a prima facie case of retaliation. Esparza does not rely on direct evidence of retaliation; we therefore examine the circumstantial evidence of the alleged causal connection between the protected activity and the adverse employment decision.

"The causation standard for the *McDonnell Douglas* prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018) (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). An employee can also establish the causal-link requirement by circumstantial evidence showing the employer's decision was based in part on knowledge of the employee's protected activity or the protected activity and adverse employment action were "not wholly unrelated." *Texas Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 657 S.W.3d 502, 516 (Tex. App.—El Paso 2022, pet. filed) (quoting *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001)).

Circumstantial evidence sufficient to show a causal link between an adverse employment decision and the filing of a discrimination charge or suit may include: (1) the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions, (2) discriminatory treatment in comparison to similarly situated employees, (3) knowledge of the discrimination charge or suit by those making the adverse employment decision, (4) evidence that the stated reason for the adverse employment decision was false, and (5) the temporal proximity between the employee's conduct and discharge.

*Crutcher*, 410 S.W.3d at 494; *see also Alamo Heights*, 544 S.W.3d at 790.

Esparza alleges she engaged in the following protected activities:

- March 25, 2010:     Filing first EEOC complaint

- June 23, 2010:      Filing suit in Federal Court (Western District of Texas)

- February 21, 2012:  Filing first suit in Texas State Court (210th Judicial District Court)

- August 14, 2013:    Appealing the 210th Judicial District Court's decision granting UTEP's plea to the jurisdiction

- September 18, 2013: Filing second EEOC complaint

Here, there is no evidence to suggest that UTEP failed to follow its ordinary policies and procedures or treated other similarly situated persons differently. There is also no evidence to suggest UTEP engaged in discriminatory treatment in comparison to similarly situated employees. Moreover, there is no evidence that the stated reason for the adverse employment decision was false; to the contrary, there is ample evidence to support Esparza was terminated for her repeated and documented workplace failures from 2008 to 2013.

The temporal proximity of most of the alleged protected activities also does not support a causal connection. *Crutcher*, 410 S.W.3d at at 495. "Temporal proximity may be evidence of a causal connection only when a person with input into the employment decision was aware of the protected activity." *Id.* Temporal proximity between a protected act and an adverse employment action may suffice as evidence of a causal connection "when they are separated by weeks, as

12

opposed to months or years." *Id.* at 496. Because Esparza was terminated on September 20, 2013, the first three alleged protected activities fail as a matter of law due to lack of temporal proximity. *See Cnty. of El Paso v. Aguilar*, 600 S.W.3d 62, 92–93 (Tex. App.—El Paso 2020, no pet.) (finding seven-month gap between protected activity and constructive discharge, without more, insufficient to give rise to inference of causation).

Even assuming the remaining two alleged protected activities pass the temporal proximity test, Esparza has not stated a prima facie retaliation claim based on these activities. As to her appeal of the plea to the jurisdiction, Esparza does not claim the decisionmakers knew about her appeal before they decided to terminate her employment. The relevant portions of Esparza's third amended petition allege:

> On or about September 10, 2013, Plaintiff received an Intent to Terminate Employment letter from Nestor Infanzon. Plaintiff was placed on administrative leave with pay, on an indefinite status by Nestor Infanzon, Director of Planning and Construction. On or about September 20, 2013, Plaintiff was terminated from her employment with the Defendant via Mr. Infanzon, however, Assistant Director Robert Parker, Associate VP of business Affair [sic] Greg McNicol, and HR Director Jessie Manciaz were involved in Plaintiff's termination.
>
> . . . .
>
> Mr. Infanzon told Plaintiff she was suspended due to several job performance problems. He advised Plaintiff he was recommending Plaintiff for termination allegedly [sic] poor job performance.
>
> . . . .
>
> The unlawful employment practices in violation of the [TCHRA] herein complained of, occurred in the course of Plaintiff's employment with [UTEP], were carried on by Defendant's agents, servants, and employees and committed because of Plaintiff's EEO activity. Defendant retaliated against Plaintiffs [sic] herein for having opposed unlawful employment discrimination with respect to the terms, conditions, privileges, advantages and benefits of her employment with [UTEP].

Esparza has failed to allege the UTEP decisionmakers knew of the appeal of the plea to the jurisdiction to establish a causal connection between the adverse employment decision and the

13

protected activity. On these factual allegations, it is not reasonable to infer that the appeal of the plea to the jurisdiction is causally connected to UTEP's decisionmaker's termination of Esparza. *See Flores*, 657 S.W.3d at 516. We therefore find there is no evidence of a causal connection between the August 14, 2013, appeal and Esparza's ultimate termination.

Esparza also cannot establish a causal nexus between her second EEOC complaint and termination because UTEP issued Esparza an intent to terminate letter on September 10, 2013, eight days before she filed that complaint. "Carrying out a previously planned employment decision is no evidence of causation." *Alamo Heights*, 544 S.W.3d at 790. The second EEOC complaint further fails the causation inquiry because there is no evidence of UTEP's knowledge of the second EEOC complaint. We therefore find there is no evidence of a causal connection between the September 18, 2013, EEOC complaint and Esparza's ultimate termination.

We hold Esparza has failed to establish a causal connection between the protected activity and the adverse employment action so as to establish a prima facie case of retaliation. Because Esparza could not establish a prima facie case under the TCHRA, it follows she has also failed to invoke the limited waiver of sovereign immunity therein. *See Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 636. Accordingly, the trial court did not err in granting UTEP's plea to the jurisdiction. Issue One is overruled.

## CONCLUSION

For these reasons, we affirm.

YVONNE T. RODRIGUEZ, Chief Justice

May 8, 2023

Before Rodriguez, C.J., Palafox, J., and Marion, C.J. (Ret.).
Marion, C.J. (Ret.), sitting by assignment

14