

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TEXAS HEALTH & HUMAN SERVICES and EL PASO STATE SUPPORTED LIVING CENTER, | § | No. 08-22-00043-CV |
| | § | Appeal from the |
| Appellants, | § | 129th Judicial District Court |
| v. | § | of El Paso County, Texas |
| DAVID SEPULVEDA, | § | (TC# 2018-DCV-0349) |
| Appellee. | § | |

**O P I N I O N**

Appellee David Sepulveda filed a lawsuit alleging that he was not promoted while working at the El Paso State Supported Living Center (the Center) as a result of age and gender discrimination and that he was retaliated against after he filed complaints with the Texas Workforce Commission Civil Right Division (TWC), the Equal Employment Opportunity Commission (EEOC), and the civil rights division of Texas Health and Human Services (THHS)—the umbrella state agency responsible for overseeing the Center. Sepulveda named both the Center and THHS (collectively, the State) as defendants and listed thirteen instances in which he believed he was wrongfully denied promotion. The State filed a plea to the jurisdiction, which the trial court granted in part and denied in part, dismissing ten of Sepulveda's claims and leaving one claim of age discrimination and two claims of retaliation. The State now appeals the partial denial of its plea, arguing that Sepulveda failed to allege sufficient jurisdictional facts to support violations of

the Texas Commission on Human Rights Act (TCHRA) on the three remaining claims. We affirm the trial court's denial of the plea on Sepulveda's age discrimination claim but reverse on his two retaliation claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Sepulveda's work and educational background

The Center is home to over one hundred residents with intellectual and physical disabilities and provides health care and behavioral treatment services. Sepulveda, who was born in March of 1969, began working at the Center in March 2001 as an entry-level Direct Support Professional I (DSP-I). He provided the residents routine personal and emergency care, including grooming, bathing, feeding, changing, and dressing them; repositioning them in bed; and transferring them to wheelchairs. He was also responsible for executing individualized treatment plans prepared by the Center's Qualified Intellectual Development Professionals (QIDPs), which included teaching life skills and independence while documenting progress and activities on a daily basis.

During his employment, Sepulveda continued his education, obtaining a Bachelor of Arts in Psychology from The University of Texas at El Paso (UTEP) in 2005. In 2011 and 2012, Sepulveda obtained four associate degrees from El Paso Community College in engineering-electrical/electronic engineering, geological sciences, mathematics, and a general associate of arts degree. And on an undisclosed date, Sepulveda began taking graduate courses at the University of Permian Basin to obtain a master's degree in special education, including a graduate certificate in autism. He also started working toward a second bachelor's degree in mathematics then changed his focus to computer science from UTEP.

Sepulveda separated from the Center in December of 2018 once he ran out of leave after suffering an injury unrelated to any of his current claims, which left him physically unable to perform his DSP-I duties.

**B.      Sepulveda's complaints of discrimination and retaliation**

While working at the Center as a DSP-I, Sepulveda applied for at least thirteen different higher-level positions but was not selected for any. On July 30, 2017, Sepulveda filed a formal charge of discrimination with both the EEOC and the TWC, alleging the Center failed to promote him due to age and gender discrimination and instead hired less qualified younger candidates, and in many instances, females.[1] The TWC was unable to substantiate Sepulveda's claims and provided a Notice of Dismissal and Right to File a Civil Action dated November 30, 2017. On December 22, 2017, the EEOC also issued Sepulveda a Notice of Right to Sue.

Relevant to the current appeal, Sepulveda then applied for two higher-level positions at the Center in February and March 2018, respectively. After not being hired into those positions, Sepulveda filed four internal complaints with THHS's civil rights office, beginning on February 3, 2018, claiming, among other things, that the Center failed to hire him for the February position due to either continuing age and sex discrimination and/or in retaliation for filing his 2017 EEOC complaint.

On July 4, 2018, Sepulveda filed a second charge with the TWC and EEOC alleging the Center retaliated against him by failing to promote him after July 4, 2017. Sepulveda amended his complaint on April 22, 2019, to add additional charges; the TWC and EEOC again notified Sepulveda they were unable to substantiate any of his charges, and on August 30, 2019, the TWC provided Sepulveda with another Notice of Dismissal and Right to File a Civil Action.

**C.      Sepulveda's lawsuit**

In January 2018, Sepulveda filed his lawsuit (and amended it in October 2019 after receiving his second EEOC response) bringing various claims of age and sex discrimination and retaliation. In September 2021, after conducting extensive discovery, the State filed its Plea to the

---

[1] The TWC received the filing on August 21, 2017.

Jurisdiction contending it had immunity from suit because Sepulveda had not established a prima facie case of either discrimination or retaliation.[2]

Following a hearing on the State's motion, the trial court dismissed all but one age-discrimination claim and two retaliation claims. The State appealed the trial court's order denying its plea to the jurisdiction with respect to the three claims.

## II. ISSUES ON APPEAL

The State raises three issues on appeal. In Issue One, the State argues that the trial court erred in denying its plea because Sepulveda failed to present sufficient jurisdictional facts to support a waiver of the State's immunity on his age-discrimination claim. In Issues Two and Three, the State similarly contends that Sepulveda failed to present sufficient jurisdictional evidence to support a waiver of immunity on his retaliation claims.

## III. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Plea to the jurisdiction

We review a trial court's denial of a plea to the jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Governmental units, like the State, enjoy sovereign immunity from lawsuits except where the Legislature waives immunity. *Flores v. Texas Dep't of Criminal Justice*, 634 S.W.3d 440, 450 (Tex. App.—El Paso 2021, no pet.) (citing *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011)). Sovereign immunity deprives a trial court of subject-matter jurisdiction. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). The legislature has provided a limited waiver of immunity for claims brought against governmental units alleging violations of the TCHRA as found in Texas

---

[2] In conjunction with its Plea to the Jurisdiction, the State also brought no-evidence and traditional motions for summary judgment in which it argued that Sepulveda did not exhaust his administrative remedies for many of his claims and that many of his claims were time-barred. On appeal, the State's sole focus is whether Sepulveda came forward with sufficient jurisdictional evidence to support a waiver of its immunity with respect to Sepulveda's three remaining claims. We therefore do not address the issues raised in the State's summary judgment motion.

4

Labor Code Chapter 21. *Id.* at 636-37. The waiver extends only to suits in which the pleadings state a prima facie claim for a TCHRA violation, otherwise the governmental unit retains immunity from suit. *Texas Dep't of Criminal Justice v. Flores*, 555 S.W.3d 656, 661 (Tex. App.—El Paso 2018, no pet.) (citing *Mission Consol.*, 372 S.W.3d at 636).

The governmental entity may challenge subject-matter jurisdiction through a plea to the jurisdiction. *Flores*, 634 S.W.3d at 450 (citing *Miranda*, 133 S.W.3d at 225–26). The plea can attack both the pleaded facts as well as the existence of jurisdictional facts by attaching evidence to the plea. *Id.* (citing *Miranda*, 133 S.W.3d at 226–27). When, as here, a defendant challenges the existence of jurisdictional facts with supporting evidence, the court must move beyond the pleadings and consider the evidence. *Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (citing *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). In such cases, the standard of review mirrors that of summary judgments. *Alamo Heights*, 544 S.W.3d at 771. Thus, if the defendant challenges the plaintiff's factual allegations "with supporting evidence necessary to the consideration of the plea to the jurisdiction, to avoid dismissal, the plaintiff[] must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Id.* In determining whether a material fact issue exists, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id.* (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). At the same time, we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not. *Id.*

**B.      TCHRA**

The TCHRA prohibits an employer from discriminating against employees on the basis of "race, color, disability, religion, sex, national origin, or age[.]" TEX. LAB. CODE ANN. § 21.051. Relevant here, it is an "unlawful employment practice" under the TCHRA if, because an individual is forty years old or older, an employer "fails or refuses to hire an individual, discharges an

individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]" TEX. LAB. CODE ANN. § 21.051(1); *see also id.* § 21.101. Similarly, the TCHRA protects employees from retaliation by their employer for, among other things, reporting discrimination, including filing a TCHRA complaint. TEX. LAB. CODE ANN. § 21.051; *see also id.* § 21.055(1)–(3). In adopting the TCHRA, the Legislature "intended to correlate state law with federal law in employment discrimination cases"; accordingly, we may look to federal law to interpret its provisions. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam).

In determining whether a plaintiff has a valid TCHRA claim, Texas courts recognize two alternative methods of proof. *See Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 477-79 (Tex. App.—El Paso 2013, pet. denied), *citing Mission Consol.*, 372 S.W.3d at 634. First, a plaintiff may prove unlawful discriminatory or retaliatory intent via direct evidence. *Id.* at 478. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* at 478.

Because it is difficult to prove discriminatory animus through direct evidence, courts recognize a second method to establish a claim of either discrimination or retaliation, known as the *McDonnell-Douglas* burden-shifting framework, which allows a plaintiff to rely on circumstantial evidence to establish his claims. *Id.*; *Texas Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (recognizing that direct evidence of discriminatory intent is typically hard to come by); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell-Douglas* framework, the plaintiff must first establish a prima facie case of discrimination or retaliation, which creates a presumption of a TCHRA violation.[3] *Alamo Heights*,

---

[3] A failure to promote is generally considered an adverse employment action for purposes of the TCHRA. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 70 (Tex. 2000) (treating failure to promote as an adverse employment action); *Esparza v. Univ. of Texas at El Paso*, 471 S.W.3d 903, 909 (Tex. App.—El Paso 2015, no pet.) ("Employment decisions actionable as adverse employment actions include decisions to hire, discharge, promote, and compensate.").

544 S.W.3d at 782. The burden then shifts to the defendant to rebut that presumption by producing a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* In a discrimination case, the burden then shifts back to the plaintiff to come forward with sufficient evidence to raise a genuine issue of material fact on the question of whether the defendant's stated reason is pretextual, i.e., that the stated reasons were either false or unworthy of credence.[4] *Id.*; *see also Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007) (discussing methods of establishing that an employer's reasons were pretextual). And in a retaliation case, the burden shifts to the plaintiff to raise a genuine issue of material fact as to whether his protected activity was the but-for cause of the adverse employment action. *Alamo Heights*, 544 S.W.3d at 782.

## IV. AGE-DISCRIMINATION CLAIM

In Issue One, the State alleges that Sepulveda failed to come forward with sufficient jurisdictional facts to support his claim of age discrimination. We disagree.

### A. Sepulveda's July 2017 application

Sepulveda's age-discrimination claim regards his June 28, 2017 DSP-II application (Job Posting 354290). Devon Perry, the hiring manager, did not select Sepulveda for an interview,

---

[4] The State contends that even if Sepulveda is able to come forward with evidence that the State's failure to promote him was pretextual, Sepulveda was still required to come forward with direct evidence that the "real reason" for the State's failure to promote him was "intentional age discrimination." In making this argument, the State appears to be relying on the former "pretext plus" standard that required a plaintiff to not only come forward with circumstantial evidence of a pretext but direct evidence of a discriminatory intent as well; however, this standard has been expressly rejected by both the United States Supreme Court and Texas courts, and it is therefore sufficient for a plaintiff to come forward with circumstantial evidence casting doubt on the employer's reasons for taking an adverse employment action, leaving the trier of fact to resolve the ultimate question of the employer's intent. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (recognizing that after the Supreme Court's decision in *Reeves*, a plaintiff need only provide "sufficient evidence to cast doubt" on the employer's explanation for an adverse employment action, and that it is up to the trier of fact to determine whether the explanation was in fact a pretext for discrimination); *Bowen v. El Paso Elec. Co.*, 49 S.W.3d 902, 909–10 (Tex. App.—El Paso 2001, pet. denied) (recognizing that in light of the *Reeves* decision, "pretext plus is not the law" and a plaintiff therefore need not come forward with direct evidence of a discriminatory intent to sustain his case under a *McDonnell-Douglas* analysis).

instead interviewing only Jesus Bravo—the ultimately successful candidate who was twenty-four years old at the time. Sepulveda relies on circumstantial evidence to show his prima facie case.

**B.      Applicable law: elements of an age discrimination claim**

In order to establish a prima face case of age discrimination, Sepulveda must come forward with sufficient jurisdictional evidence establishing: (1) he was not hired for the DSP-II position; (2) he was qualified for that position; (3) he was forty years old or older; and (4) someone significantly younger than him outside his protected class was hired for the position. *See Texas Dep't of Aging & Disability Services v. Lagunas*, 618 S.W.3d 845, 853 (Tex. App.—El Paso 2020, no pet.); *see generally Mission Consol.*, 372 S.W.3d at 641 (recognizing that an inference of age discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger"). Here, only the second element is challenged. The State argues that Sepulveda did not establish that he was qualified for the position. We disagree.

The question of whether an employee was qualified for a position turns on whether the employee met the objective qualifications for the job. *See Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003); *Texas Health & Human Services Comm'n v. Baldonado*, No. 13-14-00113-CV, 2015 WL 1957588, at *4 (Tex. App.—Corpus Christi Apr. 30, 2015, no pet.) (mem. op.) (an employee can establish his prima facie case of discrimination in a failure to promote case by demonstrating that he meets the objective hiring criteria for the job) (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001)).

**C.      Sepulveda met his prima facie case of discrimination**

The relevant job posting for the position for which Sepulveda applied (354290) stated the following "Initial Screening Criteria":

> Prefer High School diploma or GED. Prefer experience in a supervisory role. Experience in direct care role. Prefer experience in writing reports. Experience in working with people who have mental health/developmental disabilities. Prefer experience in behavior programs for persons with developmental disabilities.

It then listed the following "Knowledge, Skills [and] Abilities":

> Ability to make decisions and uses good judgment when dealing with critical incidents. Ability to react quickly and calmly in an emergency situation. Ability to demonstrate proper body mechanics, good posture, and proper lifting techniques. Knowledge of individual care techniques and of treatment, therapy, and developmental programs. Ability to provide individual care, to administer first aid and/or cardiopulmonary resuscitation, to conduct Prevention and Management of Aggressive Behavior (PMAB), to communicate effectively, to train others, and to supervise the work of others. Ability to work effectively with others and as a member of a team.[5]

The State appears to concede that Sepulveda met (or exceeded) the educational requirements for the position as listed in the initial screening criteria and that he had the required and preferred work experience both working in a direct care role with persons with mental health/development disabilities and in writing reports. However, the State contends Sepulveda lacked the posting's stated preference for experience in a supervisory role. The State's argument on this point is belied by the record.

First, Sepulveda's application expressly stated that he held a supervisory position as a junior manager at an El Paso store from 1996 to 1999 and supervised up to four employees during that time. The State argues this experience was not relevant and Sepulveda failed to meet the job posting's requirement because he had no supervisory experience at the Center. However, the job posting stated only that it preferred supervisory experience in general; it did not specify supervisory experience at the Center or even in a similar field. Moreover, it was only a preferred criterion, not a required one. *See generally Texas Dep't of Criminal Justice v. Cooke*, 149 S.W.3d 700, 706 (Tex. App.—Austin 2004, no pet.) (recognizing that an individual could still be considered qualified for a job where he lacked a certification that was listed only as preferred at

---

[5] We note that the State refers in its briefing to a different job posting (00073187), which is an undated "perpetual" posting for a DSP-II position at the Center. To the extent that it lists different qualifications or screening criteria, we do not consider that posting in our analysis.

the time he made his application). Accordingly, the record establishes that Sepulveda met all of the initial screening criteria to at least receive an interview for this position.

The State also contends Sepulveda did not demonstrate that he met the "knowledge, skills and abilities" listed on the job posting because various individuals at the Center testified that they "had doubts" about Sepulveda's ability to perform his DSP-I functions, let alone be promoted to a higher-level position. As explained below, however, their testimony was primarily based on their subjective opinions about Sepulveda's job performance, which we do not consider at this stage of the analysis. Moreover, Perry—who was responsible for the decision—did not indicate that he was even aware of the other employees' opinions at the time he decided not to promote Sepulveda. And the State provides no other evidence that Sepulveda did not meet the qualifications listed in the job posting.

Accordingly, Sepulveda met his prima facie case burden and next burden lies with the State.

**D.     The State proffered a nondiscriminatory reason for failing to promote Sepulveda**

We next determine whether the State produced sufficiently specific evidence of a legitimate, nondiscriminatory business reason for its failure to promote Sepulveda. *See Lagunas*, 618 S.W.3d at 853 (recognizing that an employer must "articulate some legitimate, nondiscriminatory reason" for its failure to promote an employee); *Texas Dep't of State Health Services v. Resendiz*, 642 S.W.3d 163, 175 (Tex. App.—El Paso 2021, no pet.) ("[A]n employer's articulated reasons for the adverse termination decision must be sufficiently specific to give the employee the opportunity to present evidence establishing that the reasons were pretextual."). The employer's burden to provide a legitimate, nondiscriminatory reason for an adverse employment action is one of production, not persuasion, and it involves no credibility assessment. *See Bowen*, 49 S.W.3d at 909 (citing *Reeves*, 530 U.S. at 142.

10

Here, Perry stated in his affidavit that he selected Bravo over Sepulveda based on his opinion that Bravo was better qualified for the position than Sepulveda. According to Perry: (1) he "knew [Bravo] to be a person who responded well at times of crisis in the homes" but that he "was not aware of Mr. Sepulveda's performance to the extent he was able to respond to crises in the homes; and (2) "Bravo wrote [in his application] that he steps into the role of his supervisor 'when the supervisor is not present' and that he performed duties as a home team leader," while "Sepulveda's application did not include this experience."[6] Perry stated in his affidavit that he was not aware of Sepulveda's age at the time he applied for the position at issue and that Sepulveda's age was not a factor in his decision.

Although the State came forward with other reasons for its decision not to promote Sepulveda, Perry's stated reasons are sufficient to state a legitimate, nondiscriminatory reason for its decision. *See Vanzante v. Texas A & M Univ.-Kingsville*, No. 13-15-00313-CV, 2016 WL 3366055, at *3 (Tex. App.—Corpus Christi June 16, 2016, pet. denied) (mem. op.) (in a failure-to-promote case, the employer's decision to select a more qualified applicant for a position generally constitutes a legitimate, nondiscriminatory justification for a failure to hire the plaintiff) (citing *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004). Accordingly, the burden shifts back to Sepulveda.

### E.    Sepulveda came forward with evidence of pretext

In the final prong of the analysis, a plaintiff can demonstrate evidence of pretext by showing either that he was clearly better qualified than the employee who was selected or that the employer's proffered explanation for its decision was false or unworthy of credence. *See Sw. Bell Tel., L.P. v. Edwards*, No. 05-09-00606-CV, 2011 WL 3672288, at *3 (Tex. App.—Dallas

---

[6] A home team leader is the DSP who is trained to be in charge of other staff members in a particular division at the Center when the regular supervisor is not there. However, as Sepulveda points out, it does not appear to be an official position at the Center.

Aug. 23, 2011, no pet.) (mem. op.) (plaintiff could show evidence of pretext in a failure-to-promote case using either method) (citing *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007)); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (discussing alternative methods of showing evidence of pretext).

While the State primarily focuses on the question of whether Sepulveda had sufficient evidence to establish that he was clearly better qualified than Bravo, Sepulveda focuses on asserting that the State's proffered reasons for not promoting him were false and/or unworthy of credence. Sepulveda was not required to demonstrate that he was clearly better qualified for the position as well. *See Little v. Texas Dep't of Criminal Justice*, 177 S.W.3d 624, 633 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("although pointing to clearly superior qualifications is one permissible way to demonstrate intentional discrimination, a plaintiff is not *required* to make this showing") (emphasis original) (citing *Julian v. City of Houston, Texas*, 314 F.3d 721, 728 (5th Cir. 2002)); *see also Jaso v. Travis Cnty. Juvenile Bd.*, 6 S.W.3d 324, 330 (Tex. App.—Austin 1999, no pet.) (stating that "[t]o prove pretext the plaintiff *may* show that he is clearly better qualified . . . but he may also prove pretext by other evidence") (citing *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1096 n.5 (5th Cir. 1994) (showing that discharged employee was clearly better qualified than younger retained employee is merely one of many ways to prove pretext for age discrimination)); *see generally Reeves*, 530 U.S. at 147 (noting that "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive").

Pretext in this context can be shown by "revealing weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's stated reasons "that a fact finder could find unworthy of credence." *Texas Dep't of Transp. v. Flores*, 576 S.W.3d 782, 794 (Tex. App.—El Paso 2019, pet. denied) (citing *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198

(10th Cir. 2000)). Sepulveda points to several inconsistencies and contradictions in the State's proffered reasons.

### 1. The State provided shifting reasons for not promoting Sepulveda

As Sepulveda points out, providing inconsistent and shifting explanations for an adverse employment decision can give rise to an inference of pretext. *See Burrell*, 482 F.3d at 415 (employer's inconsistencies in providing differing reasons for not selecting an employee for promotion was evidence from which a jury could infer that the employer's proffered reasons for the nonselection were pretextual); *Univ. of Texas Sw. Med. Ctr. v. Vitetta*, No. 05-19-00105-CV, 2020 WL 5757393, at *21 (Tex. App.—Dallas Sept. 28, 2020, no pet.) (mem. op.) ( "Doubt in the employer's asserted reason can be established in a number of ways, including by proof that the employer provided shifting or different reasons for its action at different times.") (citing *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) ("employer's inconsistent explanations for an employment decision 'cast doubt' on the truthfulness of those explanations"). And we can consider the inconsistent nature of the State's reasons beginning with the reasons for an adverse employment action given to the TWC and the reasons given throughout litigation. *See Orion Mktg. Group, Inc. v. Morris*, No. 04-07-00151-CV, 2008 WL 441759, at *4 (Tex. App.—San Antonio Feb. 20, 2008, no pet.) (mem. op.) (jury could find pretext when employer gave multiple inconsistent reasons for terminating employee, including to the TWC); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575 (5th Cir. 2003) (jury could infer discriminatory animus from employer's shifting reasons from time of the adverse employment action to time case was litigated)).

The State has provided a number of different reasons for its failure to promote Sepulveda, beginning with its responses to TWC and ending with its arguments on appeal. As Sepulveda points out, during TWC's investigation, the THHC civil rights director filed a sworn position statement contending that all of the job postings for which Sepulveda applied—including the job

13

posting under consideration (Number 354290)—had been cancelled due to budget constraints, and therefore no adverse employment action was taken against him. The State acknowledges that her statement was not true and is now relying on different reasons for failing to promote him. The State contends we should not consider its erroneous response to the TWC because it was inadvertent and the director had no personal knowledge of what occurred.

Perry, the hiring manager for the DSP-II position, focused on Bravo's qualifications as the reason for not hiring Sepulveda despite not being aware of whether Sepulveda had any similar experience and ability to respond well in times of crises.[7] Although Perry made no mention of any additional factors in his affidavit that he relied on to support his hiring decision, as discussed below, the State relied on several other explanations to justify Perry's hiring decision, many of which are belied by the record or were based on incidents that occurred after Perry made his hiring decision.

### 2. The State provided reasons that were belied by the record

First, as set forth above, the State argued that Sepulveda did not have the requisite supervisory experience to meet the initial screening criteria for the DSP-II position and even stated in the trial court that Sepulveda had "identified zero supervisory experience" in his application. Yet, as explained above, Sepulveda's application clearly stated that he had two years of supervisory experience in a prior job.

Second, the State argued that Sepulveda was not promoted because of the Center's generally low opinion of his DSP-I performance. In particular, the State relied on the affidavits

---

[7] Sepulveda also contends that the State was inconsistent in identifying the final decisionmaker responsible for hiring Bravo, contending that the record reflects that Joana Alferez, rather than Devon Perry, was the person who made the final decision and that we can infer pretext from this inconsistency. The State counters that there is no inconsistency in the record and that Perry was in fact the sole decisionmaker. We need not resolve this factual dispute, however, because in order to raise an issue on pretext in this context, the record must reflect that the State's supervisory employees were refusing to accept responsibility for the hiring decision and were shifting blame to each other. *See Texas Dep't of State Health Services v. Resendiz*, 642 S.W.3d 163, 177 (Tex. App.—El Paso 2021, no pet.). Here there was no such blame-shifting; instead, Perry expressly testified in his affidavit that he was the hiring manager responsible for failing to promote Sepulveda to the DSP-II position.

and deposition transcripts of two individuals who had interviewed Sepulveda for other positions and expressed their opinion that Sepulveda was not qualified to perform his role as a DSP-I, that he "was not a reliable worker," that he "did only the minimal," and that he had an "apathetic, unambitious approach" to his work. .However, Sepulveda points to his DSP-I job evaluation from August 1, 2016 to August 1, 2017, signed by his supervisor only a month after Sepulveda applied for this job posting, in which she stated that Sepulveda met all DSP-I job performance expectations, including his professionalism, his regular attendance at work, his initiative and willingness to take on additional responsibilities and put in extra work, and his ability to assist residents in both routine and emergency situations. And in his 2013 evaluation—the only other evaluation in the record—the same supervisor rated him competent in all performance measures.

The Texas Supreme Court faced a similar situation in *Quantum Chem. Corp.*, 47 S.W.3d at 481, where an employer claimed that it terminated an employee due to poor job performance. The employee, however, came forward with evidence that he had received satisfactory job performance reviews, which contradicted the employer's reasons for terminating him. *Id.* at 481. The court noted the evidence supported the employee's claim that the employer's stated reason for the termination was a pretext, which in turn was sufficient to "permit the trier of fact to find that the employer was actually motivated by discrimination." *Id.* at 481-82 (citing *Reeves*, 530 U.S. 133, 147–148)); *see also Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (where employer's statement that plaintiff was not selected due to problems in the workplace was contradicted by reviews received shortly before the termination, casting doubt on the employer's proffered reason for nonselection and constituting evidence of pretext). *Burrell*, 482 F.3d at 415 (evidence of performance reviews contradicting employer's claim that plaintiff was not qualified for promotion cast doubt on the employer's reasons for its failure to promote her).

15

### 3. *The State relied on events that occurred after Sepulveda's nonselection*

The State also seeks to justify its decision for selecting Bravo over Sepulveda by pointing to at least three incidents or events that occurred *after* Perry made his decision. First, the State contends that, unlike Bravo who stepped up and took on the role of home team leader, Sepulveda had refused an offer by Joana Alferez to take on such a role, thereby painting him as being unwilling to take on additional responsibility. However, Sepulveda was not offered a position as team leader until June of 2018, well after he applied for the July 2017 DSP-II job posting.[8]

Second, as set forth above, the State relies on an affidavit from an employee (Mirelle De La Cruz), who interviewed Sepulveda for another DSP-II position in 2018, in which she asserted that Sepulveda gave answers suggesting he was unfamiliar with proper lifting techniques, which were required for the DSP-II position.[9] However, since those responses were given in 2018, they could not have been a factor in the State's decision to not promote Sepulveda in July 2017. Similarly, the State relies on an affidavit from another hiring manager (Irma Nieto), who recalled that she did not select Sepulveda for an interview for another DSP-II position in late 2017, based in part on two incidents in which she observed Sepulveda almost drop a resident due to improper body mechanics and saw him look away while walking with a resident. Nieto did not indicate when those incidents occurred, nor did the record indicate that Perry was aware of those incidents when he made the July 2017 decision not to promote Sepulveda.

Third, the State relied on a statement that Sepulveda made in his deposition to the effect preferring to be in a position that was not physically demanding if the Center reinstated him due

---

[8] Further, as Sepulveda points out, Alferez's offer came with the requirement that Sepulveda be moved to a different unit at the Center with a more fragile population (thereby increasing the physical burden on him), which Sepulveda perceived to be a form of retaliation given his declining medical condition at that time.

[9] In her affidavit, De La Cruz recalled that Sepulveda admitted in his interview that "he did not know how to utilize a gait belt, which is common to use on the floor" and for which Sepulveda had been trained. De La Cruz further criticized a response that Sepulveda gave during the interview regarding how he would react if an individual fell to the floor, stating that he would move the individual first rather than "notifying nursing for medical attention first."

to the medical issues he was suffering from at that time. According to the State, this was evidence that Sepulveda was unable to perform the physical demands of either a DSP-I or DSP-II position, which it again relied on in justifying Perry's hiring decision. However, as Sepulveda points out, his physical limitations began in 2018, well after he was denied promotion to the DSP-II position. The State has not pointed to any evidence that Sepulveda had any such physical limitations at the time he was denied promotion; to the contrary, his August 2017 job review indicated he was able to perform his job.

We therefore find that the State's reliance on this after-the-fact documentation to justify the hiring decision gives rise to an inference that its proffered reasons for failing to promote Sepulveda were pretextual. *See generally Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 237 (5th Cir. 2015) (where record reflected that employer gathered "documentation" that postdated decision to terminate plaintiff, jury could infer that its reasons for her termination were pretextual).

*4. There were discrepancies in the interview process*

Finally, we note that the State's failure to select Sepulveda for an interview, despite the fact that he met the initial screening criteria in the job posting, gives rise to an inference of pretext. *See generally Stennett v. Tupelo Pub. Sch. Dist.*, 619 Fed. App'x 310, 320 (5th Cir. 2015) (where plaintiff meets the qualifications listed in job posting, "a reasonable juror could find it suspect that she would not even be provided the opportunity to interview") (citing *Wheeler v. City of Columbus, Miss.*, 686 F.2d 1144, 1153–54 (5th Cir.1982) (an employer's failure to interview a candidate can "help carry [plaintiff's] burden" of proving pretext).

Sepulveda points to several irregularities in the interviewing process: (1) despite the State's heavy reliance on Bravo's qualifications for selecting him, Bravo's application for the position is missing; (2) the record contains two separate interview matrix forms for Bravo's interview, entered on the same day with Perry's signature, each with different answers to the same questions and widely disparate scores; (3) Perry failed to record his reason for rejecting Sepulveda on the optional

17

matrix selection document, which instructs the hiring manager to provide his reasons for rejecting each applicant; and (4) Bravo was offered the position on July 24, 2017, four days before the listed date on the job posting.[10] Although we cannot say at this early stage in the proceedings that the discrepancies were indicative of discrimination, an employer's failure to follow its own internal policies and practices when taking an adverse employment action can create an inference of pretext. *See, e.g.*, *Univ. of Texas at Dallas v. Addante*, 651 S.W.3d 271, 277 (Tex. App.—Dallas 2021, no pet.) ("Circumstantial evidence of pretext may include the employer's failure to follow its usual policies and procedures in carrying out the challenged employment actions."); *Dell, Inc. v. Wise*, 424 S.W.3d 100, 111 (Tex. App.—Eastland 2013, no pet.) (recognizing that in some instances, an employer's failure to follow its own policies in terminating an employee can be evidence of pretext in an age discrimination case where employer treated younger similarly situated employees differently).

We conclude that Sepulveda came forward with sufficient jurisdictional evidence to raise a question of fact regarding whether the State's proffered reasons for failing to promote him were false or lacking in credibility and thus a pretext for age discrimination.[11] Accordingly, the trial court did not err by denying the State's plea to the jurisdiction with respect to Sepulveda's age-discrimination claim.

We overrule the State's first issue.

---

[10] The first matrix scored Bravo with a "1" in every category, which indicated that Bravo demonstrated "almost no knowledge or understanding" of the listed category. The second matrix scored Bravo with a "3" or "4" in every category, indicating that Bravo demonstrated either "acceptable knowledge and understanding" (3) or demonstrated "full knowledge and understanding" (4) of the listed categories.

[11] Because of our conclusion that Sepulveda came forward with sufficient jurisdictional evidence to support his claim of age discrimination, we need not resolve the parties' debate regarding whether Sepulveda was permitted to support his claim by relying on the affidavit of another employee at the Center who expressed his belief that the Center had also failed to promote him based on his age.

## V.  RETALIATION CLAIMS

In Issues Two and Three, the State posits that Sepulveda failed to allege sufficient jurisdictional facts to support his two remaining claims of retaliation and that the trial court erred in denying its plea to the jurisdiction with respect to both claims. We agree.

### A.  Applicable law: the elements of a retaliation claim

An employer is prohibited from retaliating against an employee who files a charge or complaint alleging discrimination in the workplace. TEX. LAB. CODE ANN. § 21.055. When, as here, an employee has no direct evidence that its employer had a retaliatory motive for engaging in an adverse employment action, we apply the *McDonnell-Douglas* burden-shifting framework to determine if he has a valid claim of retaliation under the TCHRA that waives the State's immunity. To establish a prima facie case of unlawful retaliation sufficient to waive immunity, the employee must show: (1) he engaged in an activity protected by the TCHRA; (2) he experienced a material adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Texas Health & Human Services Comm'n v. Enriquez*, 642 S.W.3d 21, 31–33 (Tex. App.—El Paso 2021, no pet.) (citing *Alamo Heights*, 544 S.W.3d at 782; *see also Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006). The causation standard for the prima-facie-case element in retaliation cases is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action. *Enriquez*, 642 S.W.3d at 32 (citing *Alamo Heights*, 544 S.W.3d at 782). If the employee satisfies its prima facie showing, a rebuttable presumption of retaliation arises, which can alone sustain the employee's claim. *Id.* (citing *Alamo Heights*, 544 S.W.3d at 782).

Once a plaintiff establishes its prima facie case, an employer can then defeat the presumption of retaliation by "producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action." *Id.* The burden then shifts back to the employee to provide

evidence that the adverse action would not have occurred when it did but for the protected activity.

*Id.*

In *Alamo Heights*, the court identified a series of factors that are useful in analyzing the causal link in a retaliation case:

> In evaluating but-for causation evidence in retaliation cases, we examine all of the circumstances, including temporal proximity between the protected activity and the adverse action, knowledge of the protected activity, expression of a negative attitude toward the employee's protected activity, failure to adhere to relevant established company policies, discriminatory treatment in comparison to similarly situated employees, and evidence the employer's stated reason is false.

544 S.W.3d at 790; *see also Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451–52 (Tex. 1996) (setting forth factors to be considered in determining whether a causal link exists between the filing of a workers compensation claim and an adverse employment action).

The Texas Supreme Court recently emphasized that these factors may be relevant in some, but not all situations, and should not be considered a replacement for the but-for-causation standard. *Apache Corp. v. Davis*, 627 S.W.3d 324, 336 (Tex. 2021) (recognizing that these "factors may be more helpful in some cases and less in others" and that "[s]ome of the factors may actually be a distraction."). Accordingly, it recognized that "determining but-for causation cannot be a matter of weighing—or worse, counting—factors that may be helpful in analyzing circumstantial evidence in some situations." *Id. at* 337. Our ultimate focus must always remain on whether the employee can show that but for the protected activity, the adverse employment action would not have occurred when it did. *See Enriquez*, 642 S.W.3d at 32-33.

We review each retaliation claim separately to determine whether Sepulveda has come forward with sufficient jurisdictional evidence.

## B.    Sepulveda's February 2018 claim of retaliation

As set forth above, Sepulveda filed his first claim of age and gender discrimination with the TWC in July 2017. Thereafter, Sepulveda applied for Job Posting 367257, with a hiring date

of February 1, 2018, which was posted to fill two QIDP-III positions. The hiring manager, Cynthia Martinez, did not select Sepulveda for an interview for a QIDP-III position; instead, she interviewed and hired two younger candidates: Jimmy Guillen-Chavez, a thirty-three-year-old male, and Denise Rocha, a thirty-year-old female. And Sepulveda claims that he was not selected for this position as the result of retaliation for filing his 2017 TWC complaint.

The State acknowledges that Sepulveda has sufficient jurisdictional facts to support the first two prongs of his prima facie case of retaliation, i.e., that he engaged in the protected activity and that he suffered a material adverse employment action by not being selected for the QIDP-III position. And Sepulveda does not deny that the State had a legitimate, non-discriminatory reason for not selecting him for that position. Thus, our focus is on the two related issues of whether Sepulveda can establish a causal link between his filing a TWC complaint and Martinez's failure to select him for the position, and relatedly, whether he can establish that but for filing the complaint, the adverse action would not have occurred when it did. We conclude that he is unable to raise a fact issue as to either.

As a preliminary matter, we agree with Sepulveda that a jury could infer from the facts that Martinez had knowledge of his 2017 TWC complaint when she failed to select Sepulveda for the QIDP-III position. Martinez was named in his 2017 TWC discrimination complaint, and she admittedly was contacted by the THHSC civil rights office asking her to supply her reasons for not selecting Sepulveda for a position he had applied for in August of 2017. Nevertheless, as the State points out, knowledge of an employee's complaint is not enough, standing alone, to establish a causal link between the filing of the complaint and an adverse employment action. *See Houston v. EBI Companies*, 53 F.3d 1281 (5th Cir. 1995) (recognizing that an "employer's knowledge of a plaintiff's participation in a protected activity, without more, is insufficient to show a *causal connection* between the plaintiff's participation in the activity and the adverse employment action"); *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658-60 (Tex. App.—El Paso 1989)

21

(because knowledge of a complaint alone is insufficient to establish causation in a retaliator discharge case, a court must determine if other factors exist in the record to support a jury's verdict that retaliation occurred). Nothing else in the record suggests a causal link between Martinez's knowledge of the complaint and her decision not to promote Sepulveda.

The seven-month gap between the time Sepulveda filed his complaint and when the Center failed to promote him to the position of QIDP-III is generally considered too long to support a finding of temporal proximity. *See Cnty. of El Paso v. Aguilar*, 600 S.W.3d 62, 92–93 (Tex. App.—El Paso 2020, no pet.) (finding seven-month gap between protected activity and constructive discharge, without more, insufficient to give rise to inference of causation); *Donaldson v. Texas Dep't of Aging & Disability Services*, 495 S.W.3d 421, 444 (Tex. App.— Houston [1st Dist.] 2016, pet. denied) (six-month gap between filing complaint of discrimination and adverse employment action was too long to create a presumption of retaliation). As the United States Supreme court has recognized, the "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Sepulveda has not pointed to any other factors to support a finding that there was a causal link between filing his complaint and Martinez's failure to hire him for the QIDP-III position. Similarly, Sepulveda has not come forward with any evidence or argument to support a finding that the State's proffered reasons for selecting the other two candidates instead of him were false or unworthy of credence. As Martinez averred in her affidavit, the two selected candidates were clearly better qualified for the position than Sepulveda both in terms of their educational background and work experience. Both candidates had a master's degree in relevant fields (Rocha had a master's in psychology and Chavez had a master's in human services), and Sepulveda did not. And both candidates had extensive experience in performing the very type of work required

of a DSP-III. Specifically, Rocha had already been working as a QIDP-II since January of 2017 developing individual treatment plans, and Chavez had been working at a behavioral health developing individual service plans for its residents. Martinez asserted in her affidavit that Sepulveda simply lacked any such experience.

Sepulveda argued in the trial court and on appeal that he was the better candidate, asserting that he had equal education and that he had been working at the Center longer and therefore had a "lot more experience" than the two successful candidates. But as Martinez correctly noted in her affidavit, Sepulveda's educational background was not equal to the selected candidates, as they both had master's degrees in relevant fields and Sepulveda did not. Moreover, the fact that Sepulveda had been working longer at the Center, standing alone, did not make Sepulveda more qualified for the position, as "years of experience do not equate with qualifications." *See Anderson v. Taylor Pub. Co.*, 13 S.W.3d 56, 60 (Tex. App.—Dallas 2000, pet. denied) (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996)). We are left with Sepulveda's subjective belief that he was the better qualified candidate, which is not sufficient to establish pretext. *See id.* (plaintiff's general statement that he was better qualified than other, younger employee to perform various jobs was "wholly conclusory and subjective and, therefore, insufficient to raise a fact issue" on the question of whether employer discriminated in favor of the younger employee by retaining him and not the plaintiff); *see generally M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000) (recognizing that an employee's "subjective belief" that he was terminated due to discrimination was insufficient to create a fact issue about whether employer's legitimate nondiscriminatory reason for terminating him was pretextual).

Accordingly, we agree with the State that Sepulveda did not come forward with sufficient jurisdictional evidence to establish that he would have been hired for the QIDP-III position but for filing his complaint. *See generally Zimlich*, 29 S.W.3d at 69–70 (reversing jury's finding of retaliation in failure-to-promote case where there was no evidence of any of the relevant factors to

support his claim that he was not promoted but for his protected activity). We therefore conclude that the trial court erred in denying the State's plea to the jurisdiction with respect to this claim.

We sustain the State's second issue.

## C. The March 2018 job application

Two days after being denied the above-described QDIP-III position on February 1, 2018, Sepulveda immediately filed an internal complaint with THHS's civil rights office alleging the State had retaliated against him for filing his 2017 TWC complaint by failing to hire him for the position. Sepulveda thereafter applied for Job Posting 371994, a DSP-IV campus coordinator position with a hiring date of March 16, 2018. The candidate selected was again Jesus Bravo, who was twenty-six years old at the time. Sepulveda argues he was not selected for this position in retaliation for filing both his 2017 TWC complaint and his internal February complaint.

Once again, the State acknowledges that Sepulveda met his jurisdictional burden on the first two prongs of this retaliation claim, as he filed his complaints of discrimination and retaliation prior to being denied the DSP-IV position. And once again, Sepulveda does not contend that the State did not have a legitimate, nondiscriminatory reason for not selecting him for the position. Therefore, our analysis here also turns on causation.

As Sepulveda filed his internal complaint with the civil rights office approximately six weeks before the State's failure to hire him for the DSP-IV position, we will assume for purposes of our analysis that this temporal proximity is sufficient to raise a fact issue on the causal link in a prima facie case. *See, e.g., Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 529 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (upholding temporal proximity as evidence of causation when the protected activity and adverse employment action were "separated by weeks, as opposed to months").

Beyond temporal proximity, which alone does not raise a fact as to but-for causation, Sepulveda has not come forward with other evidence showing he would have been promoted to

24

the DSP-IV position but for filing his complaints. *See generally Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (recognizing that "temporal proximity alone is insufficient to prove but for causation"). Sepulveda has not pointed to any evidence in the record to suggest that either of the hiring managers for this position knew that Sepulveda had filed his internal complaint with the civil rights office.[12] *EEOC v. Omni Hotels Mgmt. Corp.*, 516 F. Supp. 2d 678, 704–05 (N.D. Tex. 2007) (recognizing that a causal link is "established when evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'") (citing *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 684 (5th Cir. 2001).

Moreover, Sepulveda failed to come forward with any evidence to support a finding that the State's proffered nondiscriminatory reasons for failing to promote him to the DSP-IV position were false. In the trial court, Joana Alferez, who was one of the hiring managers for the position, provided an affidavit explaining that she hired Bravo rather than Sepulveda for the position because she believed that Bravo was more qualified. In particular, she pointed out that Bravo had already been serving as a DSP-II (behavioral coach) for several months and had "developed behavioral plans for the individuals and educated the direct services professionals (DSPs) on those behavior support plans," thereby demonstrating that he had the type of experience and applied knowledge needed to be a DSP-IV Campus Coordinator. She noted that Sepulveda lacked any such experience. In addition, Alferez recalled that during the interview, Sepulveda provided only short or incomplete answers to her questions and was unable to answer some questions, leading her to conclude that he did not have the requisite knowledge or skills required for the position. *See Kennedy v. Texas Dep't of Protective & Reg. Servs.*, No. 03-04-00608-CV, 2005 WL 3499442, at

---

[12] At least one of the hiring managers, Joana Alferez, testified at her deposition that she was aware of Sepulveda's earlier 2017 EEOC complaint, and that she had been asked to provide information to enable the State to respond. In addition, the other hiring manager, Rosa Renteria was named in the EEOC complaint, and we may therefore assume that she was aware of it. However, neither hiring manager was asked if she had been aware of Sepulveda's more recently filed internal complaint at the time Sepulveda applied for the DSP-IV position.

*4 (Tex. App.—Austin Dec. 22, 2005, no pet.) (mem. op.) (holding evidence satisfied burden of establishing a legitimate, nondiscriminatory reason for not hiring plaintiff where, among other things, another candidate's interview performance was deemed far superior); *see also Metro. Transit Auth. of Harris Cnty. v. Douglas*, 651 S.W.3d 122, 133 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007) ("An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection.").

To contest the State's reasons, Sepulveda only points to his own deposition testimony in which he denied that he gave short or inadequate answers to Alferez's interview questions. [13] However, Sepulveda's subjective belief that he performed well in the interview is insufficient to meet his burden. *See Anderson*, 13 S.W.3d at 60

Accordingly, we conclude that Sepulveda has failed to come forward with sufficient jurisdictional facts to support a finding that he would have been promoted to the DSP-IV position but for filing his discrimination complaints. *See generally Zimlich*, 29 S.W.3d at 69–70. The trial court therefore erred by denying the State's plea to the jurisdiction as to this retaliation claim.

We sustain the State's third issue.

## VI.  CONCLUSION

We affirm the trial court's order denying the State's plea to the jurisdiction with respect to Sepulveda's age-discrimination claim and remand to the trial court for further proceedings. We

---

[13] Sepulveda also claims that the circumstances surrounding Bravo's selection for the DSP-IV position were suspicious, asserting that the education and work experience portions of Bravo's application were blank. As the State points out, however, the educational portion of Bravo's application was not blank, as he checked the box stating that he had a high school degree and provided a detailed account of his employment history at the Center, albeit in the section provided for the applicant's special training and skills.

reverse the trial court's order denying the State's plea with respect to Sepulveda's two remaining retaliation claims and order those claims dismissed.

LISA J. SOTO, Justice

March 15, 2023

Before Rodriguez, C.J., Soto, J., Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (sitting by assignment)